**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Ángel A. Perales-Muñoz *et al*, <br><br> Plaintiffs, <br><br><br> v. <br><br><br> United States of America *et al*, <br><br> Defendants. | Civil No.  20-1166 (JAG-GLS) |

**REPORT AND RECOMMENDATION**

Plaintiffs Ángel A. Perales-Muñoz, Heliris Román-Rodríguez and the Perales-Román Conjugal Partnership ("Plaintiffs") filed a Complaint against the United States of America claiming damages under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"). Docket No. 1. Plaintiffs sustain that law enforcement agents of the Army Criminal Investigation Command ("CID") acted negligently when investigating Plaintiff Perales-Muñoz, who was consequently arrested and indicted; and the criminal charges were eventually dismissed. Id. The United States filed a motion to dismiss for lack of subject matter jurisdiction under the sovereign immunity doctrine and alleging that the claims are time barred under the applicable statute of limitations. Docket Nos. 7-8. The Court allowed limited discovery on jurisdiction and referred the matter to the undersigned for a Report and Recommendation. Docket No. 30. The parties submitted supplemental memorandum of law on jurisdiction. Docket Nos. 36, 46 and 50. For the reasons discussed below, the undersigned recommends that the United States of America's Motion to Dismiss under Rule 12(b)(1) be **GRANTED,** and the case dismissed for lack of subject matter jurisdiction.

## I.    Factual Allegations in the Complaint and Procedural Background

Plaintiff Perales-Muñoz was enlisted in the Puerto Rico Army National Guard on or about January 11, 1997 until his retirement on October 7, 2013. Docket No. 1 at ¶ 18. From April 10, 2006 through 2012, Perales-Muñoz worked as an independent contractor of Document and

Packaging Brokers, Inc. ("Docupak") and recruiter assistant for the National Guard Recruiting Assistance Program, known as G-RAP. Id. at ¶¶ 5, 19. G-RAP was a recruitment program administered by Docupak, designed to replenish the ranks of the Army National Guard ("ANG"). Id. at ¶¶ 12, 15. Docupak was to develop, implement and oversee G-RAP's recruitment procedures, including the hiring of recruiting assistants and the payment of financial incentives to recruiter assistants that enrolled civilians in the ANG. Id. at ¶¶ 13, 16.

In or about 2007, the CID[1] began an investigation of possible fraudulent conduct in the G-RAP Program. Id. at ¶ 22. As a result of the investigation, on or about October 26, 2015, Perales-Muñoz was charged in three separate indictments. Id. at ¶ 24. Perales-Muñoz was charged with conspiracy to defraud the United States and the National Guard Bureau, theft of Government funds, conspiracy to commit wire fraud, wire fraud, and aggravated identity theft. See Case No. 15-cr-656, Docket No. 34; Case No. 15-cr-657, Docket No. 27; Case No. 15-cr-655, Docket No. 44. Per the indictments, the object of the alleged conspiracy was for Perales-Muñoz and his co-conspirators to "unlawfully enrich themselves by stealing and obtaining by fraud property belonging to the U.S., to wit: the National Guard Recruiting Assistance Funds by applying for Program bonuses under the false and fraudulent pretense that they were responsible for referring and recruiting soldiers into the Puerto Rico Army National Guard, when in fact they did not refer or recruit these potential soldiers." Id.[2] In April 2017, the charges against Perales-Muñoz were dismissed with prejudice at the request of the Government. Docket No. 1 at ¶ 25. Plaintiffs allege that, on or about April 9, 2019, they filed administrative claims before the Department of the Army. Id. at ¶ 27. The claims were denied on October 8, 2019. Id. at ¶ 28. On April 3, 2020, Plaintiffs filed the instant complaint against the United States of America, Docupak and Philips S. Crane for damages under the FTCA.[3] Docket No. 1. Plaintiffs seek redress from the United States on account

---

[1]    Criminal Investigation Division or CID is the "historic term (and acronym) for matters specifically identified with USACIDC activities and organizations." Docket No. 53-1 at p. 22. The USACIDC is the agency within the Army responsible for the criminal investigation of certain felonies listed in Appendix B of Army Regulation 195-2 ("AR 195-2"), such as fraud against the United States, identity theft, and conspiracy to commit an offense listed in AR 195-2. Docket No. 53-2 at § 1-7(a) and pp. 32-35.

[2]    The Court "may augment the facts in the complaint by reference to (1) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice'." Cruz v. U.S., 684 F.Supp.2d 217, 220 (D.P.R. 2010)(citing Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008)).

[3]    On February 9, 2021, Plaintiffs moved for the dismissal without prejudice of their claims against Docupak and Philips S. Crane. Docket No. 20. Partial Judgment is pending.

of the allegedly faulty and negligent investigation conducted by the CID and the purported damages caused by the investigation and subsequent prosecution of criminal charges against Perales-Muñoz. Id. at ¶ 30. Perales-Muñoz claims that the CID agents lacked jurisdiction to investigate him because Army Regulation 195-2 ("AR 195-2") did not apply to the Puerto Rico ANG or to private citizens such as Perales-Muñoz, who was working for Docupak as an independent contractor. Id. at ¶ 32.

The United States moved for dismissal of the complaint for lack of subject matter jurisdiction and failure to state a claim. Docket Nos. 7, 8, 36 and 50. The United States argues that, pursuant to the discretionary function exception, it has not waived sovereign immunity with respect to claims under the FTCA. Docket No. 8 at p. 4, note 5. The United States further argues that the Perales-Román Conjugal Partnership did not exhaust administrative remedies prior to asserting its claim under the FTCA. Id. Plaintiffs counter that, because the CID agents that conducted the Perales-Muñoz's investigation acted outside the scope of the authority conferred by AR 195-2, the discretionary function exception does not apply, and sovereign immunity has been waived. Docket No. 13. Plaintiffs further argue that the CID's investigation was contrary to the Posse Comitatus Act, 18 U.S.C. § 1385 ("PCA") and 10 U.S.C. § 275. Docket No. 46. Plaintiffs do not dispute that the Perales-Román Conjugal Partnership failed to exhaust administrative remedies.

## II.    Discussion

### A.  Standard of Review

A defendant may challenge the Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Valentín v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001); Marrero v. Costco Wholesale Corp., 52 F. Supp. 3d 437, 439 (D.P.R. 2014). As courts with limited jurisdiction, federal courts have the duty to strictly construe jurisdictional grants. See e.g., Alicea Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R. 1998). When considering a motion under Rule 12(b)(1), the Court's inquiry is whether a plaintiff's pleadings set forth sufficient allegations to establish subject matter jurisdiction. Reyes de León v. Coconut Prop., LLC, --- F.Supp.3d --, 2021 WL 2772366 at *2 (D.P.R. July 1, 2021)(citing Marrero, 52 F. Supp. 3d at 439; Casey v. Lifespan Corp., 62 F. Supp. 2d 471, 474 (D.R.I. 1999)). "In reviewing the motion, the Court must construe the complaint liberally and the pleadings are to be taken as true, 'according the plaintiff the benefit of all reasonable inferences.'" Reyes de León, 2021 WL 2772366 at *2 (citing Murphy v. United

<u>States</u>, 45 F.3d 520, 522 (1st Cir. 1995)). However, plaintiffs "may not rest merely on 'unsupported conclusions or interpretations of law.'" <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995)(<u>citing</u> <u>Washington Legal Found. v. Massachusetts Bar Found.</u>, 993 F.2d 962, 971 (1st Cir.1993)).

In ruling on a motion under Rule 12(b)(1), the Court may "take into consideration extra-pleading material" and when the factual allegations are challenged, the party invoking federal jurisdiction "must submit affidavits and other relevant evidence to resolve the factual dispute regarding jurisdiction.". <u>Sánchez v. U.S.</u>, 707 F.Supp.2d 216, 225 (1st Cir.2010)(citations omitted). The burden of demonstrating the existence of federal jurisdiction rests on the party asserting it. <u>Murphy</u>, 45 F.3d at 522; <u>Droz Serrano v. Caribbean Records, Inc.</u>, 270 F.Supp.2d 217 (D.P.R.2003). "Dismissal [is] proper if the facts alleged reveal a jurisdictional defect not otherwise remediable." <u>Reyes de León</u>, 2021 WL 2772366 at *2 (<u>citing</u> <u>Sumitomo Real Estate Sales (N.Y.), Inc. v. Quantum Dev. Corp.</u>, 434 F. Supp. 2d 93, 95 (D.P.R. 2006)).

## B. Perales-Román Conjugal Partnership

Under Section 2675 of the FTCA, a plaintiff is required to exhaust administrative remedies prior to filing a claim in court. Specifically:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency** in writing and sent by certified or registered mail.

> 28 U.S.C. § 2675(a) (emphasis added).

The purpose is "to ensure that 'meritorious claims can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation'". <u>Barrett ex rel. Estate of Barrett v. U.S.</u>, 462 F.3d 28, 36 (1st Cir. 2006)(citations omitted). Therefore, prior to racing to court under the FTCA, a plaintiff must file an administrative claim before the appropriate federal agency within two years of accrual of the claim. 28 U.S.C. § 2401(b); <u>Calderón López v. United States</u>, 303 F.Supp. 3d 212, 218-219 (D.P.R. 2018)(<u>citing</u> <u>González v. United States</u>, 284 F.3d 281, 287 (1st Cir. 2002)). Failure to file a timely administrative claim deprives the Court of jurisdiction to adjudicate an action under the FTCA. <u>Cartagena v. United States</u>, 321 F. Supp. 2d 265, 270-71 (D.P.R. 2004)(<u>citing</u> <u>Attallah v. United States</u>, 955 F.2d 776, 779 (1st Cir.1992)).

The Perales-Román Conjugal Partnership has asserted a claim against the United States under the FTCA. Docket No. 1 at ¶ 37. Even though Plaintiffs generally alleged that they exhausted administrative remedies prior to filing the complaint (Id. at ¶¶ 26-29), the United States alleges that the Perales-Román Conjugal Partnership did not. Docket No. 8. The United States submitted two letters sent by Plaintiffs' counsel to the Department of the Army claiming damages under the FTCA: one letter was sent on behalf of Ángel Perales-Muñoz and the other on behalf of Heliris Román-Rodríguez. Docket Nos. 8-1 and 8-2. The forms submitted by Perales-Muñoz and Román-Rodríguez in support of their respective administrative claim (Form 95: Claim for Damage, Injury or Death) were filed individually, not as a conjugal partnership. Id. at p. 3. Plaintiffs have not addressed this argument, much less presented any evidence to establish that the Perales-Román Conjugal Partnership has exhausted administrative remedies. Therefore, as it stands, the Perales-Román Conjugal Partnership's claim against the United States is barred for failure to exhaust administrative remedies.

### C. Ángel Perales-Muñoz and Heliris Román-Rodríguez

The United States may not be sued without its consent. United States v. Dalm, 494 U.S. 596, 608 (1990); Murphy v. United States, 45 F.3d at 522; Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017); Reyes-Colón v. United States, 974 F.3d 56, 58 (1st Cir. 2020). Nonetheless, the FTCA does include a consent for suits due to "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment". 28 U.S.C. §2675; Reyes-Colón, 974 F.3d at 58. The burden of proving that sovereign immunity has been waived rests upon plaintiff and the FTCA's sovereign-immunity waiver must be construed strictly in favor of the Government. See Mahon v. United States, 742 F.3d 11, 14 (1st Cir. 2014) (citations omitted); Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011); Reyes-Colón, 974 F.3d at 60.

The waiver of immunity under the FTCA is subject to several exceptions, the discretionary function exception being "the most expansive". Santana-Rosa v. United States, 335 F.3d 39, 42 (1st Cir. 2003); Paret-Ruiz v. U.S., 943 F.Supp.2d 285, 288 (D.P.R.2013). The discretionary function exception applies to:

> any claim based upon an act or omissions of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a

Perales et al v. USA et al
Civil No. 20-1166 (JAG-GLS)

discretionary function or duty on the part of a federal agency or an employee of the
Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The purpose of this exception is to shield the Government from liability "that would seriously
handicap efficient government operations" and to preserve the separation of powers by preventing
second guessing of "legislative and administrative decisions grounded in social, economic, and
political policy through the medium of an action in tort." United States v. Varig Airlines, 467 U.S.
797, 814 (1984) (citing United States v. Muñiz, 374 U.S. 150, 163 (1963)). If the discretionary
function exception applies, a claim under the FTCA must be dismissed for lack of subject matter
jurisdiction. See 28 U.S.C. § 1346(b); Kelly v. United States, 924 F.2d 355 (1st Cir. 1991);
Nogueras-Cartagena v. United States, 172 F. Supp. 2d 296, 317 (D.P.R. 2001).

To determine whether the discretionary function exception applies the Court must first
identify the conduct that is alleged to have caused the harm. Mahon v. United States, 742 F.3d 11,
14 (1st Cir. 2014). After identifying the challenged conduct, the Court must apply a two-pronged
test: "[f]irst, the challenged conduct must be discretionary in nature, and second it must be the type
of conduct 'that the discretionary function exception was designed to shield.'" United States v.
Gaubert, 499 U.S. 315, 322-323 (1991). Acts are considered discretionary when they involve "an
element of judgment or choice." Id. at 322 (citations omitted). A government employee's action is
discretionary if the employee's duties require making independent decisions. Berkovitz v. United
States, 486 U.S. 531, 536 (1988); Nogueras, 172 F. Supp.2d at 317. If the agency's policies or
programs "allow room for implementing officials to make independent policy judgments, the
discretionary function exception protects the acts taken by those officials in the exercise of this
discretion." Berkovitz, 486 U.S. at 546. The second prong requires analyzing whether there is
some plausible policy justification for the challenged conduct. Id. 486 U.S. at 537; Shansky v.
United States, 164 F.3d 688, 692 (1st Cir. 1999); Sánchez, 707 F.Supp. 2d at 227. When a federal
statute, regulation or policy allows an agent from the government to exercise discretion, the Court
must presume that the agent's actions are policy driven. Gaubert, 499 U.S. at 324-325; Reyes-
Colón, 974 F.3d at 59; Mahon, 742 F.3d at 14 ("[o]f course the law presumes that discretionary
acts involve policy judgments").

Perales et al v. USA et al
Civil No. 20-1166 (JAG-GLS)

This two-pronged test has been applied by the First Circuit Court of Appeals "to give law enforcement officers broad discretion in how best to enforce the law." Paret-Ruiz, 943 F.Supp.2d at 288 (citations omitted). Indeed, in the context of negligent investigations claims under the FTCA, such as the ones at issue in this case, the First Circuit "has clearly indicated that '[s]ince decisions to investigate, or not, are at the core of law enforcement activity,' investigative activity involves the kind of 'policy-rooted decision-making that section 2680(a) was designed to safeguard.'" Díaz-Nieves v. United States, 29 F.Supp.3d 71, 76 (D.P.R. 2014)(citing Kelly v. United States, 924 F.2d 355, 362 (1st Cir.1991)). Following this premise, this District Court has found that "[i]nvestigations by federal law enforcement officers…clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." Nogueras, 172 F. Supp. 2d at 317 (quoting Sabow v. U.S., 93 F.3d 1445, 1453 (9th Cir.1996)). And, as such, claims rooted on investigations by federal law enforcement have been deemed to fall under the discretionary function exception to the waiver of sovereign immunity. Díaz Nieves, 29 F. Supp. 3d at 75-76; Calderón-López, 303 F. Supp. 3d at 221–23; Nogueras, 172 F. Supp.2d at 319; Timmerman v. United States 2012 WL 2052149 (D.P.R. 2012). The decisions with respect to how to carry out investigations are also covered by such an exception. Torres–Dueño v. United States, 165 F.Supp.2d 71, 74 (D.P.R.2001)(citing Horta v. Sullivan, 4 F.3d 2, 21 (1st Cir.1993)(decisions as to how best to fulfill that duty are protected by the discretionary function exception)); see also Sloan v. United States Dep't of Hous. and Urban Dev., 236 F.3d 756, 762 (D.C.Cir.2001) ("[T]he sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice."). Moreover, when a claim for improper investigative conduct is "inextricably tied" to the decision to prosecute, the discretionary function exception applies. Sloan, 236 F.3d at 762; Donahue v. United States, 870 F.Supp. 2d 97, 108 (D.D.C. 2012).

Per the discussion above, it may be concluded that as a matter of principle a decision to investigate, and the way in which such an investigation is executed, by federal law enforcement will fall under the discretionary function exception to the waiver of sovereign immunity under the FTCA. And that, accordingly, claims of negligent investigation against the United States will not be actionable because the United States remains immune from such suits. Naturally, however, this assumes that the federal law enforcement agents that conducted the challenged investigation acted under color of authority. Plaintiffs claim that this is not the case. Plaintiffs posit that the

discretionary function exception does not apply here because the CID's investigation of Perales-Muñoz was banned by AR 195-2, the PCA and 10 U.S.C. § 275. The United States in turn argues that it was precisely AR 195-2 what granted the CID the ability to conduct the challenged investigation and that, accordingly, the discretionary function exception applies. The United States further argues that nothing in the PCA or 10 U.S.C. § 275 prohibited the investigation of Perales-Muñoz by the CID. The Court agrees with the United States on all counts.

### a. Army Regulation 195-2[4]

The purpose of AR 195-2, as described in its 1985 version, was to establish the Army's policy "on criminal investigation activities, including the utilization, control, and investigative authority and responsibilities of all personnel assigned to criminal investigation (CID) elements". Docket No. 53-1 ("AR 195-2 (1985)") at § 1-1 (a). AR 195-2 (1985), which applied to the Active Army, the U.S. Army Reserve and the ANG, when in active federal service, constituted the basic authority for CID agents to conduct criminal investigations. Id. at p. 3 and § 1-1 (b). As provided therein, the authority of CID agents to investigate stemmed from the existence of an "Army interest" when such authority had not been specifically reserved to another agency. Id. at § 3-1. An "Army interest" existed when:

> (4) The **Army is the victim of the crime; e.g., the offense involves the loss or destruction of government property or allegations of fraud** (as defined in DOD instructions concerning the criminal investigation of fraud offenses) relating to Army programs or personnel.

> Id. at ¶ 3-1 (b)(4) (emphasis added).

Pursuant to AR 195-2 (1985), the USACIDC[5]— a major Army command of the Department of the Army— was responsible for investigating those Army-related offenses listed in Appendix B of the AR 195-2 (1985). Id. at §§ 2-1(a); 3-3(a). Per Appendix B of AR 195-2 (1985), CID agents could investigate any fraud against the United States when the amount involved was $500 or more, and any conspiracy to commit such frauds. Id. at pp. 17-18.

---

[4]    The versions of AR 195-2 applicable to the facts in this case are the October 30, 1985 version (Docket No. 53-1), which was in place when the investigation began sometime in 2007, and the 2009 and the 2014 versions (Docket Nos. 53-2 and 53-3) because Perales-Muñoz was indicted in 2015. The pertinent sections of AR 195-2 (2009) discussed here are essentially the same as those in the 2014 version of AR 195-2.

[5]    U.S. Army Criminal Investigation Command.

AR 195-2 was amended on May 15, 2009, with an effective date of June 15, 2009 ("AR 195-2 (2009)"). Docket No. 53-2. AR 195-2 (2009) expanded its applicability to include the ANG generally even if not in active federal service. Id. at p. 3. As stated in its prior version, the purpose of AR 195-2 (2009) is to establish the Army's policy on criminal investigating activities, including the responsibilities of use, control investigative authority, responsibilities of all personnel assigned to the USACIDC; and to establish the basic authority for the conduct of criminal investigations. Id. at § 1-1. The scope of the investigative authority of the CID agents was further expanded in AR 195-2 (2009). An "Army interest" *generally* exists when one or more of the following applies:

> (3) there is a reasonable basis to believe **that a suspect may be a civilian employee of the DOD or a DOD contractor who has committed an offense in connection with his or her assigned contractual duties which adversely affects the Army**.

> (4) the **Army is the victim of the crime; for example, the offense involves the loss or destruction of Government property or allegations of fraud** (as defined in DOD/DOJ instructions concerning the criminal investigation of fraud offenses) relating to Army programs or personnel.

> Id. at ¶ 3.1 (b) (emphasis added).

AR 195-2 (2009) clarified that the USACIDC was the sole agency within the Army responsible for the criminal investigation of felonies listed in Appendix B of AR 195-2 (2009). Id. at § 1-7(a). Appendix B of AR 195-2 (2009) includes additional offenses which the CID agents have jurisdiction to investigate, to wit, frauds against the United States when the amount involved is greater than or equal to $5,000, identity theft in connection with fraud equal to $5,000 or greater, and conspiracy to commit such offenses. Docket No. 53-2 at pp. 32-35. AR 195-2 (2009) specifically states that CID agents may investigate crimes affecting the U.S. Army Reserve or ANG through fraud, theft, diversion, or destruction of Government funds or property. Docket No. 53-2 at § 3-3(a)(7).

Plaintiffs sustain that CID agents could not investigate Perales-Muñoz under AR 195-2 because the G-RAP was not an Army program and, purportedly, the funds used to pay G-RAP recruiting assistants like Perales-Muñoz were private funds from Docupak. These arguments are unavailing. AR 195-2 applies to the ANG. There is no dispute that the G-RAP Program was a recruitment program designed to replenish the ranks of the ANG, that Docupak was the contractor hired by the National Guard Bureau to administer the G-RAP Program, and that Perales-Muñoz was hired by Docupak as recruiter assistant for the G-RAP Program. Docket No. 1 at ¶¶ 12, 15

and 19. To the extent that AR 195-2 applies to the ANG and the G-RAP Program was for the benefit of the ANG, it is only logical to conclude that the CID had jurisdiction under AR 195-2 to investigate allegations of fraud in the G-RAP Program. Furthermore, even assuming *arguendo* that funds used to pay recruiters may have been managed or under the control of Docupak, there is no question that such funds were used for the benefit of the Army. And, as discussed, under AR 195-2, the Army's interest in investigating Perales-Muñoz existed because the Army was the purported victim of the fraud and the offensive conduct was committed by a subcontractor of the National Guard Bureau.[6]

Under AR 195-2, CID agents had the authority to investigate Perales-Muñoz because an "Army interest" existed pursuant to section 3.1(b)(4); the Army was the victim of the crime. Pursuant to the indictments, Perales-Muñoz was charged with conspiracy to defraud the United States and the National Guard Bureau of money and property in an amount greater than $5,000, theft of Government funds, conspiracy to commit wire fraud, wire fraud, and aggravated identity theft. Under AR 195-2, the CID was responsible for the investigation of frauds against the United States, identity theft and conspiracy to commit any of these offenses, when these offenses were Army-related. The investigation conducted by CID agents was thus specifically related to offenses which adversely affected the Army and were purportedly committed by a subcontractor of Docupak. The fact that Perales-Muñoz was an independent contractor of Docupak is neither here nor there. There was an "Army interest" to investigate acts of frauds by all Army contractors. Docket No. 53-2 at § 3.1(b)(3)(the term "Army interest" in AR 195-2 (2009) includes a DoD contractor who commits an offense in connection with the assigned contractual duties, which

---

[6]     Plaintiffs cite to United States v. Osborne, 886 F.3d 604 (6th Cir. 2018) in support of their argument that there was no "Army interest" because the funds used to pay the recruiting assistants of the G-RAP Program were private funds from Docupak. Osborne was a full-time recruiter for the ANG and was accused of working with two recruiting assistants to share in the incentives offered by the G-RAP Program. Osborne was convicted for aiding and abetting a recruiting assistant in the theft of government funds. On appeal, he argued that the government had failed to prove that the money involved was government property. The Court in Osborne had to decide whether the theft was related to "something of value of the United States"; one of the elements of the offense charged. The issue was whether the Government retained sufficient control over the funds so that they could be deemed as "something of value of the United States". In reversing Osborne's conviction, the Court concluded that there was insufficient evidence that the Government supervised and controlled the G-RAP funds so that a reasonably jury could find the elements of the offense proven beyond a reasonable doubt. But see United States v. Alvarado, 2014 WL 12785138 * 8 (D.N.M. 2014) (concluding that G-RAP Program funds were public funds). Plaintiffs sustain that, because the Court in Osborne determined that the G-RAP funds were private, there was no Army interest in the investigation of Perales-Muñoz. From the express language in AR 195-2 it is evident, however, that the source of the funds is not what defines the existence of an "Army interest".

adversely affects the Army). This includes subcontractors. AR 195-2 did not prohibit the CID's investigation of Perales-Muñoz or the G-RAP Program. Quite to the contrary, AR 195-2 provided a solid basis for CID agents to investigate Perales-Muñoz not only because the Army was the victim of the offenses and the offenses charged were those included in Appendix B but also because Perales-Muñoz was a subcontractor of the DoD contractor in charge of administering the G-RAP Program.

     **b.  Posse Comitatus Act and 10 U.S.C. § 275**

The PCA prohibits the willful use of any part of the Army as a posse comitatus or otherwise to execute the laws of the United States or of any of its states or territories, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress. 18 U.S.C. § 1385. Through the enactment of the PCA, Congress prohibited the participation of Army personnel in civilian law enforcement activities unless otherwise expressly permitted by law. The purpose of this prohibition was to avoid "military intrusion into civilian affairs". Laird v. Tatum, 408 U.S. 1, 15 (1972). The statutorily prohibited conduct is the execution of laws by Army personnel. United States v. Stouder, 724 F.Supp. 951, 952-953 (M.D. Ga. 1989); United States v. McArthur, 419 F.Supp. 186, 194 (D.C.N.D. 1975).

Notwithstanding the foregoing, "in 1981 Congress clarified the PCA by enacting general law enforcement exceptions which expressly grant authority for military assistance to civilian law enforcement under some circumstances". United States v. Alvarado, 2014 WL 12785138 at *3 (D.N.M. Nov. 20, 2014). 10 U.S.C. § 275 was one such exception. Id. Through the enactment of 10 U.S.C. § 275 ("Section 275") the Secretary of Defense was authorized to issue the necessary regulations to prohibit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity, unless participation in such activity by such member is otherwise authorized by law. 10 U.S.C. § 275. "Pursuant to this congressional directive, the Secretary of Defense promulgated a Department of Defense (DoD) Directive 5525.5 ("DoD 5525.5") regulating the cooperation of military personnel with civilian law enforcement officials." United States v. Hitchcock, 286 F.3d 1064, 1069 (9th Cir. 2002)(citing DoD Directive 5525.5 (Jan. 15. 1986), as amended Dec. 20, 1989)).[7]

---

[7]    Later incorporated to DoD Instruction 3025.21 and codified at 32 C.F.R. § 182.6 (2013). Part 182 of 32 CFR was removed on April 5, 2018; however, the Perales-Muñoz investigation began "around 2007" and

Perales et al v. USA et al
Civil No. 20-1166 (JAG-GLS)

DoD 5525.5 lists several activities that are considered "permissible direct assistance" from military personnel. See DoD 5525.5, Enclosure 4. "Permissible direct assistance" are actions taken for the "primary purpose" of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities (§ E4.1.2.1); investigations and other actions related to the enforcement of the Uniform Code of Military Justice (UCMJ) (§ E4.1.2.1.1); investigations and other actions that are likely to result in administrative proceedings by the DoD, regardless of whether there is a related civil or criminal proceeding (§ E4.1.2.1.2); protection of DoD equipment (§ E4.1.2.1.5), and such other actions that are undertaken primarily for a military or foreign affair's purpose (§ E4.1.2.1.6). These regulations thus create an exception to the PCA and PCA-like restrictions to the direct involvement by the military in civil enforcement when there is an "independent military purpose". U.S. v. Dreyer, 767 F.3d 826, 833 (9th Cir. 2014); Hitchcock, 286 F.3d at 1069; United States v. Chon, 210 F.3d 990, 994 (9th Cir. 2000). When there is an "independent military purpose" there is "no willful use of [Army personnel] as posse to execute civilian laws" and no violation to the PCA.[8] Applewhite v. U.S. Air Force, 995 F.2d 997, 1001 (10th Cir. 1997). The DoD 5525.5 has been upheld as a valid regulation elucidating the PCA. See Chon, 210 F.3d at 994 and n.3 (agent's investigation had the independent military purpose; no PCA violation); Hitchcock, 286 F.3d at 1069-1070 (same); Dreyer, 767 F.3d at 833 (same).

The facts in United States v. Alvarado, 2014 WL 12785138 (D.N.M. 2014) are like the ones here. The matter before the Court in Alvarado was a request to suppress evidence collected by CID investigators regarding the G-RAP Program, which resulted in Alvarado's indictment for conspiracy to commit wire fraud, wire fraud and aggravated identity theft. Like Perales-Muñoz, Alvarado[9] served as a recruiting assistant for the G-RAP Program and was paid bonuses for civilians recruited to enroll in the ANG. Alvarado argued that the PCA prohibited the Army from investigating a civilian. The Court held that DoD 5525.5 created a valid exception to the PCA permitting military involvement in civilian law activities when undertaken for the "primary

---

Perales-Muñoz was indicted in 2015. 32 CFR §182.6 established that, despite the provisions of the PCA and Section 275, personnel from the DoD could provide direct assistance in law enforcement activities, such as in investigations.

[8]    The term "independent military purpose" is equivalent to the "primary purpose exception" in DoD 5525.5. Hitchcock, 286 F.3d at 1070.

[9]    Alvarado was a retired coronel in the New Mexico ANG. Like Perales-Muñoz, Alvarado was not on active duty.

purpose" of furthering a military function of the United States. <u>Alvarado</u> at *3-6. The Court reasoned that, since the G-RAP Program was designed to recruit soldiers for the ANG and the program could be undermined by fraudulent conduct, there was an independent military interest in investigating fraud allegations related to the G-RAP Program. <u>Id.</u> at *7. The Court also found that the protection of military resources committed to recruiting was an independent military interest that justified the CID agents' investigation. <u>Alvarado</u> at *8 (<u>citing</u> DoD 5525.5 § E4.1.2.1.5; § E4.1.2.1.6 and <u>Chon</u>, 210 F.3d at 994)(protection of military funds like the protection of military equipment explicitly included in DoD 5525.5 as an independent military interest outside the proscription of the PCA and "within the catchall 'independent purpose' exception" established by DoD 5525.5).

The CID agents' investigation of Perales-Muñoz was prompted by a purported fraudulent scheme of G-RAP funds, which led to the prosecution of criminal charges against him under civilian laws. Since the CID agent's investigation was related to a recruitment program that was intended to replenish the ranks of the ANG, any illegal conduct that could undermine the legitimacy of this program was of the utmost interest to the Army. Moreover, the Army undoubtedly has an interest in preserving and safeguarding its funds for recruitment. Thus, pursuant to the provisions of DoD 5525.5, the CID's actions were "permissible direct assistance" as they were taken for the "primary purpose" of furthering a military function of the United States and protecting Army funds. Because the participation of CID agents in the investigation of Perales-Muñoz was permissible under the independent military purpose exception, there was no PCA or Section 275 violation.

### III. Conclusion

The complaint fails to state a plausible cause of action under the FTCA. The Conjugal Partnership Perales-Román failed to exhaust administrative remedies. Further, the Perales-Muñoz investigation conducted by the CID, and the manner it was conducted, was an exercise of judgment and AR 195-2 allowed CID agents to exercise such a judgment, creating a plausible policy reason for the investigation. The investigation was not prohibited by the PCA or Section 275. Therefore, the discretionary function exception to the waiver of sovereign immunity in the FTCA applies. The Court does not have jurisdiction to entertain Plaintiffs Perales-Muñoz's and Román-Rodríguez's claims for negligent investigation under the FTCA. Because the Court lacks subject matter jurisdiction to entertain Plaintiffs' damages claims under the FTCA, the undersigned

Perales et al v. USA et al
Civil No. 20-1166 (JAG-GLS)

recommends that the United States' motion to dismiss under Fed.R.Civ.P. 12 (b)(1) be **GRANTED,** and the case dismissed with prejudice.

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have **fourteen (14) days** to file any objections to this Report and Recommendation. Failure to file timely and specific objections within the specified time waives the right to appeal this order. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F. 2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Services, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 19th day of January 2022.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge